IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ASHER M.,[1]

      Plaintiff,

      v.                                                      Civ. No. 21-156 SCY

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff argues that the Commissioner committed error when she denied his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff argues that the ALJ erred in failing to incorporate limitations from the step-three analysis (which considers whether the severity of the claimant's mental impairments meets a listing) into the analysis of the residual functional capacity (which assesses what a claimant can do despite mental limitations). Plaintiff also argues that the ALJ did not comply with prior mandates from this Court and from the Appeals Council. The Court rejects all of these contentions. As a result, the Court DENIES Plaintiff's Motion To Reverse And Award Benefits, With Supporting Memorandum, Doc. 28, and affirms the decision below.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 5, 10, 12. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

**APPLICABLE LAW**

    A.    Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>  most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5)  If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

    B.    <u>Standard of Review</u>

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Plaintiff makes two main arguments on appeal. First, Plaintiff argues that the ALJ erred because she found marked-to-moderate limitations in mental work-related abilities at step three, but failed to account for those limitations in the RFC at step four without explanation. Second, Plaintiff argues that the ALJ failed to follow remand instructions from this Court and from the Appeals Council. The Court disagrees with both, and affirms the decision below.

**I.    The ALJ Is Not Required To Explain How the Findings at Steps Two and Three Are Accounted for in the RFC.**

At step two, the ALJ found Plaintiff has these severe mental impairments: bipolar disorder; panic disorder; impulse control disorder; PTSD; and schizophrenia. AR 457. At step three, the ALJ found these impairments do not meet a listing, singly or in combination. AR 458. In the domains of understanding, remembering, or applying information; in concentrating, persisting, or maintaining pace; and adapting or managing oneself, the ALJ found moderate limitations. AR 459. In the domain of interacting with others, the ALJ found a marked limitation. *Id.*

At step four, the ALJ assessed the following mental limitations in work-related abilities:

> [Plaintiff] can perform SVP 1 and 2 level work,[4] with GED levels in math, language and reasoning of no greater than 2; cannot perform fast paced production work; can make simple work decisions; work should be performed in the same location every day; can occasionally interact with co-workers, supervisors, but rarely interact with the general public, defined as less than 10 percent of the workday.

AR 460.

---

[4] "[U]nskilled work corresponds to an SVP [specific vocational preparation] of 1-2 . . . ." SSR 00-4p, 2000 WL 1898704, at *3.

Plaintiff argues that the ALJ erred in assessing these moderate and marked limitations in mental work-related abilities without accounting for these limitations in the RFC. Doc. 20 at 8. Plaintiff focuses on the moderate limitation in the ability to concentrate, persist, or maintain pace, and marked limitation in the ability to interact with others, arguing that the RFC fails to incorporate these findings or explain why they were rejected. Plaintiff argues that "[a]lthough the ALJ's description of the mental limitations at step three is not an RFC assessment, however, the ALJ may not simply stop there." Doc. 28 at 8 (citing *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015)). "The ALJ's decision should properly account for those step three limitations or explain their omission." *Id.* Plaintiff further argues that had these limitations been incorporated, the VE's testimony would have mandated a finding of disability. *Id.* at 8-10. Plaintiff argues the error is therefore harmful, as the RFC does not account for the various findings such as a marked limitation in the ability to interact with coworkers and supervisors. *Id.* at 10-11.

The Court rejects the argument that an ALJ must either mechanically mirror step-three findings in the RFC, or explain the omission. As the Commissioner points out, this argument has been rejected by the Tenth Circuit multiple times in a series of unpublished opinions. *DeFalco-Miller v. Colvin*, 520 F. App'x 741, 747-48 (10th Cir. 2013) (unpublished) (the plaintiff "fails, however, to identify a requirement that step three findings concerning the listings be incorporated into the RFC determination used in steps four and five"; there is no requirement to even discuss a step-three finding in the RFC narrative because "the ALJ's statement at step three that [Plaintiff] exhibited 'no more than' moderate difficulties maintaining social functioning is neither a medical fact nor nonmedical evidence"); *Anderson v. Colvin*, 514 F. App'x 756, 763 (10th Cir. 2013) (unpublished) (stating that this argument "simply misunderstands the sequential evaluation process" (internal quotation marks omitted)); *Bales v. Colvin*, 576 F. App'x 792, 798

(10th Cir. 2014) (unpublished) ("the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case"); *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (unpublished) ("The ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis."). The Court finds these cases persuasive. The requirement at step four is to explain how the ALJ weighed evidence and fashioned the RFC. SSR 96-8p, 1996 WL 374184, at *7. This does not encompass a requirement to account for the step-three findings, which have a different purpose in the sequential evaluation process.

Plaintiff's citation to *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015), does not alter this conclusion. To the contrary: *Vigil* was clear that "[t]he ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Id.* at 1203.

> At the "more detailed" step four assessment of Vigil's RFC, [SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996)], the ALJ found some evidence indicating that Vigil had some problems with concentration, persistence, and pace "such that [he] could not be expected to perform complex tasks." Admin. R. at 17 (citing findings of impaired delayed recall, inability to spell in reverse, or recall the President's name). But, the ALJ further found that "the findings of a normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of normal thought processes, indicate[d] that Vigil retain[ed] enough memory and concentration to perform at least simple tasks." *Id.*
>
> Thus, the ALJ accounted for Vigil's moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work.

*Id.* at 1203-04.

In other words, the ALJ in *Vigil* found—all within the context of step four—moderate limitations in concentration, persistence, and pace; explained the basis for them; and accounted

7

for the limitations by assigning the claimant to unskilled work. *Id.* The Tenth Circuit's holding that this is an adequate step-four procedure is unrelated to what the ALJ said at step three.

The Court rejects Plaintiff's argument that the ALJ was required to account in the RFC for the limitations found at step three.

**II.     Plaintiff Identifies No Violation of Appellate Mandates.**

Plaintiff argues that the ALJ below did not follow various appellate mandates. Doc. 28 at 12-16. "Although primarily applicable between courts of different levels, the [law of the case] doctrine and the mandate rule apply to judicial review of administrative decisions, and require the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (internal quotation marks and alterations omitted).

This case has been up and down the appellate ladder an unusual number of times. ALJ Dunlap issued an unfavorable decision in December 2011. AR 7-23. In May 2012, the Appeals Council denied review. AR 607-12. Plaintiff appealed to this Court and in early 2013, Judge Martinez issued proposed findings and a recommended decision ("2013 PFRD") and Judge Parker adopted that recommendation, remanding the case. AR 565-85. In January 2015, ALJ Lindsay issued an unfavorable decision. AR 613-40. In April 2017, the Appeals Council reversed and remanded to the ALJ. AR 641-46. ALJ Lindsay then issued another unfavorable decision in December 2017. AR 647-73. The Appeals Council reversed again in September 2019. AR 674-679. ALJ Fellabaum issued an unfavorable decision in March 2020. AR 451-75. This time, the Appeals Council denied review in January 2021, AR 438-44, and Plaintiff appeals to this Court.

Plaintiff identifies two respects in which he believes the appellate mandate was not followed: the instructions in Judge Martinez's PFRD to properly evaluate the state agency

consultant's opinion, and the instructions in the September 2019 Appeals Council's order to provide further evaluation of a treating physician's assessment of moderate mental limitations. The Court disagrees on both fronts.

   A.   The 2013 PFRD

The 2013 PFRD, adopted in full by Judge Parker, recommended reversal of the ALJ's decision for several reasons. Among them was the ALJ's analysis of the non-examining state agency consultant's opinion, Dr. Renate Wewerka. At that time, the practice of state agency consultants was to fill out special Form SSA-4734-F4-SUP when evaluating mental work-related limitations. That form contained three sections, one of which was a checkbox-style worksheet for rating limitations in the four domains of functioning (Section I) and another which provided space for a narrative opinion recording the mental RFC determination (Section III). In Section I, Dr. Wewerka checked the boxes for moderate limitations in sustained concentration, persistence, and pace. AR 315-16. In Section III, Dr. Wewerka opined that Plaintiff "can understand, remember and carry out simple instructions, make simple decisions, and respond appropriately to changes in a routine-work setting." AR 317. The ALJ assessed an RFC finding that "[m]entally, the claimant can understand, remember and carry out simple instructions as demanded in jobs at Reasoning Development Level 2 by the Dictionary of Occupational Titles." AR 14.

   The PFRD found "that the ALJ's RFC assessment does not adequately take into account Dr. Wewerka's findings of moderate limitations in sustained concentration and persistence in her mental RFC assessment." AR 583. The PFRD also found that the state agency consultant's Section I limitations in concentration and persistence were not necessarily incorporated by the doctor's own Section III narrative conclusion that the claimant can perform simple work. AR 584. The PFRD recommended remand on the basis that the ALJ cannot give "great weight" to the state agency opinion while disregarding some Section I limitations without explanation. *Id.*

After the district court issued its judgment based on this PFRD, the Tenth Circuit held in a published decision that moderate limitations in Section I *are* typically accounted for and consistent with the state agency consultant's Section III opinion that a claimant can perform simple work. *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016). In that case, the state agency consultant found in Section I that the claimant was "moderately limited in her ability to . . . maintain concentration, persistence, and pace." *Id.* at 1268. In the Section III narrative, the state agency consultant opined that the claimant could "engage in work that was limited in complexity." *Id.* The ALJ assessed an RFC for "only simple, repetitive, and routine tasks." *Id.* at 1269. The Tenth Circuit found that although the ALJ "did not repeat the moderate limitations assessed by the doctor," affirmance was proper because the ALJ "incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities." *Id.* Most importantly, the Tenth Circuit expressly disavowed the approach taken in the 2013 PFRD:

> Ms. Smith questions how the administrative law judge's assessment incorporates the numerous moderate limitations indicated by Dr. Frommelt. This is the wrong question. As discussed above, Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment of residual functional capacity. We compare the administrative law judge's findings to Dr. Frommelt's opinion on residual functional capacity, not her notations of moderate limitations.

*Id.* at 1269 n.2.

Plaintiff may be correct that the ALJ's opinion is not consistent with the instructions in the 2013 PFRD. But it *is* consistent with the Tenth Circuit's 2016 published opinion. Under *Smith*, the question is not whether there is a conflict between the RFC and the worksheet-format moderate limitations in attendance or persistence; the question is whether the RFC matches the doctor's opinion on what kind of work Plaintiff *can* perform despite her limitations. 821 F.3d at 1269 n.2. As explained above, Dr. Wewerka opined that Plaintiff "can understand, remember and carry out simple instructions, make simple decisions, and respond appropriately to changes in a

routine-work setting." AR 517. The RFC currently under review is that Plaintiff "can perform SVP 1 and 2 level work, with GED levels in math, language and reasoning of no greater than 2; cannot perform fast paced production work; can make simple work decisions; [and that] work should be performed in the same location every day." AR 460. These ultimately match, and *Smith* therefore requires affirmance. The mandate rule does not require the Court to reverse the ALJ for complying with intervening, published Tenth Circuit precedent. *Grigsby v. Barnhart*, 294 F.3d 1215, 1219 (10th Cir. 2002) (a "well-recognized exception[]" to the mandate rule "is triggered by a subsequent, contrary decision of applicable law by a controlling authority"). The Court therefore finds no error in any arguable failure to comply with the 2013 PFRD.

    B.    <u>The September 2019 Appeals Council's Order</u>

Plaintiff further argues that the ALJ's analysis of the medical opinion of the treating physician, Harold Alexander, Jr., failed to adhere to instructions from the Appeals Council. Doc. 28 at 14-16. Due to the nature of this argument, the Court must engage in a thorough discussion of four decisions: the December 2017 ALJ opinion; the September 2017 Appeals Council opinion reversing and remanding; the March 2020 ALJ opinion on remand; and the January 2021 Appeals Council opinion declining review.

    1.    <u>Procedural history</u>

Dr. Harold Alexander completed a psychological Medical Source Statement dated January 20, 2011, finding no "marked" limitations, some "moderate" limitations, and some "slight" limitations in different areas of functioning. AR 430-32. The December 2017 ALJ opinion gave Dr. Alexander's statement "significant weight" but not "controlling weight." AR 663. The ALJ concluded "Dr. Alexander's assessment of only slight to moderate limitations is supported by the longitudinal treatment record," without discussing what those moderate limitations were. AR 664.

The September 2019 Appeals Council decision noted that "Dr. Alexander defined the term moderate as, a limitation that seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis and the individual should not be placed in a job setting where this mental function is critical to job performance or to job purpose." AR 676 (internal quotation marks, alterations, and citation omitted). The Appeals Council stated:

> the [December 2017 ALJ] decision does not address the definition of moderate as noted in Dr. Alexander's assessment or how the moderate limitations are accommodated or consistent with the assessed residual functional capacity. The decision also does not address whether any of the moderate limitations Dr. Alexander assessed are critical to job performance or to job purpose and whether that would impact the claimant's ability to perform the jobs the vocational expert cited. Further evaluation is necessary.

AR 677. The Appeals Council concluded by instructing that "[u]pon remand, the Administrative Law Judge will:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating source opinion of Dr. Alexander pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence."

*Id.*

The March 2020 ALJ decision now under review gave Dr. Alexander's opinion "significant weight." *Id.* The ALJ acknowledged that Dr. Alexander "opined that the claimant had a variety of psychological limitations ranging from no significant limitation to a moderate limitations [sic], including that the claimant had moderate limitations in functioning with respect to understanding and remembering detailed instructions, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with co-workers or peers." AR 464. The ALJ then summarized the evidence of record supporting this opinion, and concluded:

> the undersigned limits the claimant to SVP 1 or 2 level work with GED levels no greater than 2, no fast paced work, no exposure to hazards or driving, simple work decisions, and occasional interaction with coworkers and supervisors, consistent with Dr. Alexander's observation of moderate limitations with regard to understanding and remembering detailed instructions, interacting appropriately with the general public, and getting along with coworkers and supervisors.

AR 465.

On appeal, Plaintiff argued that this did not comply with the 2019 instructions from the Appeals Council, but the January 2021 Appeals Council decision rejected this position:

> The Administrative Law Judge appropriately assigned great weight to the January 20, 2011 opinion of the claimant's treating physician, Harold Alexander, M.D., who found moderate limitations in understanding and memory, except a slight limitation in understanding and remembering very short and simple instructions; moderate limitations in social interactions, except a slight limitation in asking simple questions and requesting assistance; and moderate limitations in adaptation, except a slight limitation in traveling to unfamiliar places (Exhibit 15F). The Administrative Law Judge appropriately accounted for moderate findings by limiting the claimant to simple unskilled work, at SVP level 1 or 2, with no fast paced work, simple work-related decisions performed at the same location, occasional interaction with coworkers and supervisors and rare interaction with the general public (Hearing Decision, Finding 5). While not directly addressing the key Dr. Alexander provided as interpretation for his finding of moderate limitations, the Administrative Law Judge addressed the substance of his report by addressing Dr. Alexander's finding that the claimant could not work on a consistent basis (Decision, pages 11 and 12). The Administrative Law Judge fully addressed Dr. Alexander's findings in the decision, with citations to evidence of record.

AR 438.

### 2. Discussion

Plaintiff argues that the Appeals Council failed to apply its own remand order. The Court disagrees after a close reading of the September 2019 Appeal Council's decision. In essence, without specifically labeling any of it as error, the September 2019 Appeals Council's decision describes a number of things the December 2017 ALJ decision did not address:

- the definition of moderate as noted in Dr. Alexander's assessment;

- how the moderate limitations are accommodated or consistent with the assessed residual functional capacity;

- whether any of the moderate limitations Dr. Alexander assessed are critical to job performance or to job purpose;

- whether that would impact the claimant's ability to perform the jobs the vocational expert cited.

AR 677.

But the Court disagrees that the Appeals Council's mandate consisted of a requirement that the ALJ discuss all four bullet points on remand. The Appeals Council finished this paragraph simply by stating: "Further evaluation is necessary." *Id.* And the remand instructions were essentially to follow the law. *Id.* (instructing the ALJ to "provide [RFC] rationale with specific references to evidence of record in support of assessed limitations"; "evaluate the treating source opinion of Dr. Alexander pursuant to the provisions of 20 CFR 404.1527 and 416.927"; and "explain the weight given to such opinion evidence").

To be sure, the March 2020 ALJ decision does not explicitly discuss each of these four bullet points. But the March 2020 ALJ followed the instructions to give Dr. Alexander's opinion "further evaluation" along the guidelines provided, and also to provide an RFC rationale with record citations and to evaluate Dr. Alexander's opinion according to legal requirements.[5] Moreover, the opinion was responsive to the Appeals Council's instructions in that—unlike the December 2017 ALJ opinion—the March 2020 ALJ opinion explicitly discussed Dr.

---

[5] To the extent Plaintiff argues the March 2020 RFC does not otherwise comply with the law, the argument is conclusory and does not engage with the medical record evidence or give specific reasons why the RFC is inadequate. Doc. 28 at 15 ("In the 2020 ALJ decision, the ALJ merely provided conclusions without the supporting rationale. AR 464-465. The Appeals Council incorrectly deemed that adequate, as it fails to comply with the required legal standards."). The Court does not address this contention. *Grede v. Astrue*, 443 F. App'x 323, 327 (10th Cir. 2011) (unpublished) (declining to address a contention that was "conclusory, undeveloped, and raised only in [the] conclusion").

Alexander's moderate limitations, stated why the evidence of record supports them, and explained how the moderate limitations are incorporated into the ALJ's RFC. AR 464-65.

The Court does not find any error in the 2021 Appeals Council's determination that this was sufficient to satisfy the scope of its own mandate. "Obviously, the court which drafted the mandate is normally in the best position to determine whether the [agency]'s subsequent order is consistent with the mandate . . . ." *F.T.C. v. Colgate-Palmolive Co.*, 380 U.S. 374, 379 (1965); *see also Patterson v. Apfel*, 198 F.3d 258, 1999 WL 1032973, at *4 (10th Cir. 1999) (unpublished table decision) ("the court issuing a mandate governing further proceedings is in the best position to interpret the scope of that mandate"). The Appeals Council acknowledged that the March 2020 ALJ decision did not discuss Dr. Alexander's definition of "moderate," but stated that the evaluation complied with the "substance" of the remand order. AR 438. The Appeals Council was in the best position to determine the substance of its own order, and in any event the Court reaches the same conclusion. The Court affirms.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion To Reverse And Award Benefits, With Supporting Memorandum, Doc. 28, is **DENIED**.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**